[No. 32368. Department Two. September 10, 1953.]

INLAND NAVIGATION COMPANY, *Appellant,* v. KYLE McGRADY *et al., Respondents.*[1]

*S. Dean Arnold,* for appellant.

*E. J. Stanfill (Cox, Ware & Stellmon,* of counsel), for respondents.

FINLEY, J.—This appeal presents the question of whether certain actions of the parties may be said to evidence, establish, or constitute a contract between them; and, if so, whether that contract is specifically enforcible. The trial court was of the opinion that the actions of the parties were not such as to bind them contractually; that, in fact, no

[1]Reported in 260 P. (2d) 893.

agreement had been entered into; that certain correspondence between the parties did not constitute a sufficient written memorandum of an initial offer and acceptance to satisfy the requirements of RCW 63.04.050, and, consequently, no recovery could be had by the plaintiff.

As developed in the trial in the superior court, the facts material to this appeal can be stated as follows: The McGradys, for several years prior to this action, owned and operated a freight and passenger service on the Snake river between Lewiston, Idaho, and a point up the river in the vicinity of Johnson's bar. They operated terminal facilities in Lewiston, which included steelways and a warehouse. They owned a boat, the "Florence." In addition, the McGradys leased a lodge at the mouth of Sand creek from the United States forest service and also held an interstate commerce commission permit relative to their transportation business.

In 1951, the McGradys suspended operations in order for Kyle McGrady to accept a position in Kennewick, Washington, with the United States corps of engineers. During the fall of 1951, plaintiff corporation expressed a desire to buy out the business operations of the McGradys in order to expand its own facilities. Some negotiations took place between the parties; however, these were fruitless. Nothing more was done about the matter until the following spring, when the parties corresponded as follows:

On March 3, 1952, Florence McGrady wrote to Captain A. Leppaluoto, general manager of Inland Navigation Company, expressing a willingness to sell the McGrady interests in the river transportation business. We quote the letter:

"Dear Sir:

"I am trying still to sell the lodge. Would your company be interested in the lodge, The Florence boat hull and the ware house all for the sum of twenty-five hundred dollars?

"As I stated before I am anxious to sell in order that we will be able to move to Kennewick. An early reply would be greatly appreciated. . . ."

After receipt of this letter, Captain Leppaluoto telephoned Mrs. McGrady to ask if the proposal included the sale or

transfer of the I.C.C. permit. Apparently, I.C.C. permits for river transportation in the particular area are not readily obtainable and generally must be acquired from existing holders. Florence McGrady replied she would have to ask her husband about this, and on March 18, 1952, she wrote the following letter to Captain Leppaluoto:

"Dear Sir:

"After our phone conversation yesterday I talked with Mr. McGrady. He said that would include the I.C.C. rights.

"The rental on the water front is not paid for '52. Nor is Sand Creek lease paid for this year.

"We have a little fishing equipment at the lodge which our son would like to get, some time. . . ."

When this letter was received, Carl Floten, plaintiff company's authorized agent, called Mrs. McGrady, stating that he would be in Lewiston on March 24th, and would bring a check with him. Subsequently, on March 29th, Floten wrote Mrs. McGrady:

"Dear Mrs. McGrady:

"We are pleased to have your letter of March 18 advising us that the proposal for sale would include the I.C.C. rights.

"My plans are to be in Lewiston Tuesday, April 1st and at that time I will contact you with regard to attending to the necessary details for this sale.

"Very truly yours,
"Inland Navigation Company
"[Signed] Carl Floten."

Carl Floten went to Lewiston on April 1st, and there employed counsel to prepare the necessary legal papers and requested Florence McGrady to go to the attorney's office to execute them. Both Kyle McGrady and Florence McGrady appeared at the attorney's office on Saturday, April 5, 1953. The attorney asked them for their United States forest service special use permit, from which he wanted to obtain legal descriptions of certain property. Seemingly, at that time, no money had been delivered to the attorney for transmittal to the McGradys, and the attorney had prepared no legal papers relative to the proposed transaction between the parties.

On Tuesday, April 8th, Mr. Floten again went to Lewiston and left funds in the sum of $2,500 (the purchase price allegedly agreed upon by the parties) with the attorney. On the same date, Mrs. McGrady produced the special use permit and was told that the legal papers would be ready for signing and the transaction could be closed on the following Saturday, April 12th. The McGradys did not appear at the office on the appointed date, and on April 15th, they informed the plaintiff they were not going through with the sale. On April 18th, another attorney of plaintiff company tendered the sum of $2,500 to the McGradys, but they refused to accept it.

It appears from the evidence that, between April 1st and April 15th, Carl Floten (allegedly in reliance on an existing contract) obtained transfer of the use permit from the United States forest service, obtained a consent from the city of Lewiston for assignment of a lease held by the McGradys on certain property used in their operations, and obtained a five-year lease on additional property from the city of Lewiston at a rental of $280 per year.

After McGradys refused to go through with the deal, plaintiff company instituted an action for specific performance of the alleged contract and simultaneously obtained a restraining order to prohibit the McGradys from transferring their interests to others. The restraining order is still in effect, pending the outcome of this appeal. The trial judge, as indicated in his oral decision, was of the view that a contract had never arisen between the parties because there had never been an unconditional acceptance of terms outlined in the McGrady letters which might be considered offers; and that, since the writings here involved and the actions of the parties were insufficient to meet the statute of frauds requirements to evidence an oral contract, the statute of frauds barred recovery. Fact findings and conclusions favorable to the McGradys were approved, and a judgment of dismissal was entered by the trial court. The corporation has appealed.

We are of the opinion that the trial court did not err in deciding that appellant was not entitled to recover.

As respondents correctly point out, the initial inquiry must be directed to a fundamental principle of contract law, namely, has there been (a) an offer? (b) accepted unconditionally on its terms? Unless there has been an offer and acceptance such as to give rise to a valid contract, the question of whether the statute of frauds bars recovery is premature and immaterial.

■ With this thought in mind, we turn to the conclusions of law, the findings of fact, and the evidence on which they were based. When the evidence, consisting chiefly of the letters and telephone calls between the parties, is considered, it is clear that there never was an unconditional acceptance on its terms of any offer made by the respondents.

The findings of the trial court recite the correspondence and telephone calls between the parties. Conclusion of law No. 1, based on those findings, is to the effect that no contract had ever been entered into between the parties. The findings on which the conclusion of law is based are not challenged by the appellant. Indeed, appellant assigns error to and challenges only one finding, to which we will refer below, and concedes that his appeal must stand or fall on this single assignment of error.

Since no error is assigned to the findings of fact on which the relevant conclusion of law (that no contract was consummated between the parties) is predicated, and since the conclusion of law is consistent with and supported by the trial court's findings, we are compelled to affirm the decision of the trial court.

As pointed out heretofore, appellant assigns error to only one fact finding (No. VI). This finding relates solely to the question of whether the statute of frauds is applicable. Appellant contends that fact finding No. VI is objectionable, and that the acts of the appellant, recounted in the fact finding, constitute the giving of something in earnest to bind the contract, or, alternatively, constitute part perform-

ance sufficient to take the case out of the statute of frauds. As we have already indicated, it is unnecessary to discuss at length the arguments based on this assignment of error. This is for the reason that the trial court's conclusion that no oral or other contract was ever entered into initially is convincing and is acceptable to us, making it unnecessary for us to pass upon the question of the applicability of the statute of frauds.

The judgment of the trial court is affirmed in all respects.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.